UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| COASTAL COMMERCE BANK | Civil Action No. 6:17-1011 |
| | Judge Unassigned |
| versus | |
| | Magistrate Judge Carol B. Whitehurst |
| RAYMOND SCULLY, JR., ET AL. | |

**REPORT AND RECOMMENDATION**

Before the Court, on referral from the district judge, is a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 12] filed by defendants Jared Cheramie and Joshua Cheramie (the "Cheramie defendants"). Plaintiff Coastal Commerce Bank ("Coastal Commerce") opposes the motion [Doc. 16]. For the reasons that follow, the undersigned recommends that the motion to dismiss for lack of personal jurisdiction be GRANTED, and that plaintiff's claims against Jared and Joshua Cheramie DENIED AND DISMISSED WITHOUT PREJUDICE.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The underlying facts of the lawsuit are as follows. On September 12, 2016, Coastal Commerce Bank ("Coastal") filed a lawsuit in this Court – *Coastal Commerce Bank v. SM Energy, LLC, et al.*, Civil Action No. 6:16-cv-01274 – for foreclosure of its First Preferred Ship Mortgage and to recover amounts potentially owed by SM Energy, LLC, pursuant to a promissory note which was secured by the

mortgaged vessel. Coastal Commerce also included Mr. Raymond Scully, Jr. as a defendant in that suit, seeking to enforce a personal guaranty signed by Mr. Scully on behalf of SM Energy, LLC.

On August 10, 2017, Coastal Commerce filed the instant lawsuit seeking to revoke certain transfers of immovable property made by Mr. Scully in Louisiana, Texas, and Mississippi. Jared and Joshua Cheramie – the Cheramie defendants – are Mr. Scully's grandsons who live in Dayton, Texas, who were the recipients of a piece of property located in Dayton, Texas, which they allege they were gifted by Mr. Scully in 2016.

Coastal Commerce alleges that when the ship mortgage was executed and funds were advanced in 2014, the loan was based upon Mr. Scully's financial statements that he had submitted to Coastal Commerce, attesting to approximately $4 million in personal wealth. Coastal Commerce further alleges that, in connection with his personal financial statements, Mr. Scully agreed to notify Coastal Commerce of any change in his financial circumstances. Coastal Commerce contends that at the time Coastal Commerce filed suit in the related case, Mr. Scully had not notified Coastal Commerce of any transfers of his property, but that after suit was filed, in December, 2016, Mr. Scully provided an updated financial statement to Coastal Commerce which evidenced the diminution of his wealth, from $3,968,472 as of

August, 2013, to $53,698 in December, 2016.

The Cheramie defendants seek dismissal in the instant motion on grounds they are not subject to the personal jurisdiction of this Court. In support of their request for dismissal under Rule 12(b)(2), they argue they have minimal contacts with Louisiana and are not subject to the personal jurisdiction of this Court. They argue they are residents of Dayton, Texas; are domiciled in Texas, having moved to Texas in 2013 with the intent to remain in Texas; each have a Texas driver's license, are employed and work in Texas, and have no intent to move from Texas. The Cheramie defendants were both married in Texas, and both have multiple sons, who attend school in Texas. The Cheramie defendants argue they only travel to Louisiana occasionally, and only recall having traveled to Louisiana twice in the past year, both times for major holidays with family members.

In opposition to the motion to dismiss, Coastal Commerce asserts that by March of 2016 – well before the instant lawsuit was filed – the offshore energy industry was in the midst of a prolonged downturn, and the default of the SM Energy loan that Mr. Scully guaranteed was imminent, making Mr. Scully's personal liability imminent as well. According to Coastal Commerce, Mr. Scully began to systematically disperse his personal wealth to his children and other insiders. The Cheramie defendants received certain property in Texas from Mr. Scully around this time.

Coastal Commerce argues that part of the diminution in Mr. Scully's personal financial wealth was due to the transfer of the property in Dayton, Texas to the Cheramie defendants, and therefore, the Cheramie defendants were made defendants in the instant lawsuit. Coastal Commerce argues that Mr. Scully and the Cheramie defendants have provided conflicting statements regarding the nature of the transfer of the Dayton, Texas property, arguing they have advised that the property was "gifted" to the Cheramies, while on the other hand, the documents that they signed and caused to be filed in the public records of Liberty County, Texas, show a secured transaction in the amount of approximately $116,000 and secured by a deed of trust. Coastal Commerce asserts it is unclear which of these two scenarios reflects the actual intention of Mr. Scully and the Cheramies. In essence, Coastal Commerce argues the property was fraudulently transferred to the Cheramie defendants as a way of diverting assets that should be paid to Coastal Commerce in connection with the loan default. Coastal Commerce submits that, because the Cheramie defendants were participants in Scully's fraudulent transfer, they are subject to this Court's jurisdiction.

## II. LAW AND DISCUSSION

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."

*Luv N'care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Thus, Coastal Commerce bears the burden in the instant case of establishing the personal jurisdiction of this Court over the Cheramie defendants.

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction. *Guidry v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[ ] for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). The Court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery. *Id.*

"Jurisdiction may be general or specific." *Mullins v. Testamerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009), *citing Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir.2008). Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant

5

purposefully directed at the forum state. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir.2000), *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In contrast, general jurisdiction requires the defendant to have maintained "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Jurisdiction over a non-resident defendant is proper when (1) the defendant is amenable to service of process under the long-arm statute of the forum state and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Dalton v. R&W Marine, Inc*., 897 F.2d 1359, 1361 (5th Cir. 1990). In the instant case, "these two inquiries merge into one because Louisiana's long-arm statute permits service of process coterminous with the scope of the due process clause." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (reversed in part on other grounds), *citing* La. R.S. 13:3201(B). "The Due Process Clause of the Fourteenth Amendment protects a corporation, as it does an individual, against being made subject to "the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'" *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 5th Cir. 2012).

A court may exercise personal jurisdiction over a non-resident defendant when

"(1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) *quoting Int'l Shoe*, 326 U.S. at 316.

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific personal jurisdiction exists (1) when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state; (2) the controversy arises out of or is related to those activities; and (3) the exercise of jurisdiction is fair, just, and reasonable. *Nuovo Pignone, SpA,* 310 F.3d 378, *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General personal jurisdiction exists when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether such activity is related to the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

The fairness inquiry is determined by analyzing several factors: (1) the burden upon the nonresident defendant of litigating in the forum state; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990).

### **Specific jurisdiction analysis**

After careful analysis of the arguments and record in this matter, the undersigned concludes that Coastal Commerce fails to establish that this Court has specific jurisdiction over the Cheramie defendants. The Cheramie defendants have not directed their activities toward Louisiana or purposefully availed themselves of the privileges of conducting activities in Louisiana. The Cheramie defendants live, work, and have children attending school in Texas. The Cheramie defendants only travel to Louisiana occasionally, and only recall having traveled to Louisiana twice in the past year, both times for major holidays with family members.

Furthermore, to the extent the Cheramie defendants engage in activities in the forum state, the controversy in question does not arise out of and is not related to those activities. Rather, Coastal Commerce's cause of action arises out of a guaranty executed by Mr. Scully, and does not arise out of or result from the Cheramie

defendants' forum-related contacts.

Finally, the exercise of jurisdiction over the Cheramie defendants in this Court would not be fair, just, or reasonable given that the Cheramie defendants live, work, and have children attending school in Texas, and have no involvement with the contractual obligations Coastal Commerce seeks to enforce against Mr. Scully.

Thus, for the foregoing reasons, the undersigned finds specific jurisdiction does not exist in this case.

### **General jurisdiction analysis**

General personal jurisdiction exists when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether such activity is related to the plaintiff's cause of action. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609–10 (5th Cir. 2008), *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir.2001) (citation omitted). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction ...." *Johnston*, 523 F.3d at 610, *citing Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir.2002)

(citations omitted).  "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction."  *Johnston*, 523 F.3d at 610, *citing Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir.2007) (citation omitted).

"General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir.1999). The contacts must be reviewed in toto, and not in isolation from one another.  *Holt Oil & Gas Corp. v. Ha*rvey, 801 F.2d 773, 779 (5th Cir.1986); *see also Religious Tech. Ctr.*, 339 F.3d at 374("None of the activities individually constitutes a substantial or meaningful contact with Texas, Texas law, or Texas residents, and certainly considered in toto they fail to amount to continuous and systematic contact with Texas such that general jurisdiction is created.").  But vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction.  *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir.1999).

Review of the record in this matter shows that the Cheramie defendants do not have sufficient contacts with the forum state to demonstrate continuous and systematic contact with Louisiana.  Therefore, no general jurisdiction exists in this case.  Because the plaintiff fails to demonstrate the existence of either specific or

general jurisdiction, this Court need not make a finding as to whether the "fairness" prong of the jurisdictional inquiry is satisfied.

### Fraud

Coastal Commerce argues that recipients of fraudulent transfers can be subject to the personal jurisdiction of a foreign state when their participation in the fraudulent transaction was aimed at a creditor in the forum state. Citing *Dontos v. Vendomation NZ Ltd.*, 582 Fed.Appx. 338, 344–45 (5th Cir. 2014) (unpublished), Coastal Commerce argues "a tortious act committed outside the forum state that has consequences or effects within the forum will establish minimum contacts if the tortious conduct is purposefully or expressly aimed at the forum state." 582 Fed. Appx at 344-45. In *Dontos*, the plaintiffs, residents of the state of Texas, filed suit in the Northern District of Texas against two citizens of Massachusetts (John Halpern and George Parkman Denny), and three corporations, alleging state law claims of fraudulent asset transfer, fraud, negligent misrepresentation, civil conspiracy, and aiding and abetting, and asserting federal jurisdiction based on the diversity of citizenship of the parties. *Id.* at 339. Plaintiffs alleged that the defendants fraudulently induced them into a franchise agreement to service vending machines on unprofitable routes, made misrepresentations upon which plaintiffs detrimentally relied, fraudulently transferred assets to avoid payment of plaintiffs' Texas state court

judgment against them, and failed to inform the plaintiffs of the franchiser's bankruptcy. *Id.* The district court, after denying plaintiffs' motion for jurisdictional discovery, granted defendants' motion to dismiss for lack of personal jurisdiction, finding that plaintiffs failed to establish a prima facie case of personal jurisdiction over any of the defendants. *Id.* at 341-42.

On appeal, the Fifth Circuit discussed the plaintiff's fraudulent asset transfer claim, which the court considered within the context of its specific jurisdiction analysis. Plaintiff's claim was alleged against defendants under Section 24.005(a) of the 344 Texas Uniform Fraudulent Transfer Act ("TUFTA") for their participation as subsequent transferees in the fraudulent asset transfer of certain assets to prevent satisfaction of the plaintiffs' Texas state court judgment against a third party. The court engaged in a lengthy discussion of the roles of the parties vis-a-vis TUFTA and the facts surrounding the formation of certain business entities to which the funds in question were transferred, and explained as follows:

> As noted supra, a tortious act committed outside the forum state that has consequences or effects within the forum will establish minimum contacts if the tortious conduct is purposefully or expressly aimed at the forum state. While this court is hesitant to make per se rules regarding the fact-specific minimum contacts analysis, a debtor who is liable under TUFTA to a Texas resident is likely subject to suit in the creditor's forum state because the debtor acted with actual or constructive fraudulent intent to expressly aim their conduct at a creditor in the forum, where the tort's harm was felt. However, a subsequent transferee's liability under TUFTA alone may be insufficient to establish

12

> minimum contacts with the creditor's forum state. ***For example, an individual or corporation who is a mere "passive transferee," is unlikely to be subject to jurisdiction in the creditor's resident state. However, if the transferee "precipitate[s] and direct[s] an alleged fraudulent transfer at the expense of a known, ... creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas," then the transferee is subject to suit in Texas court.***

*Id.* at 344–45 (internal citations omitted) (emphasis added).

In the instant case, the record is devoid of any specific allegations that the Cheramie defendants participated in a fraudulent transaction of assets that was purposely and expressly aimed at Coastal Commerce in the forum state. Review of Coastal Commerce's complaint shows that the Cheramie defendants are alleged to have merely been the recipients of certain property in Dayton that was owned by their grandfather. There are no allegations that the Cheramie defendants colluded with Mr. Scully to divert or hide assets from Coastal Commerce. The fact that the participants in the transaction may have given different reasons or motivations for the transfer does not give rise to a nefarious intent to defraud. Simply put, no specific fraudulent intent on the part of the Cheramie defendants has been alleged, and the undersigned finds Coastal Commerce has failed to show that the Cheramie defendants were more than merely passive transferees in the transaction at issue. Under the jurisprudence, the foregoing does not rise to the level of purposeful activity aimed at the forum state with an intent to defraud.

Considering the foregoing, the undersigned concludes Coastal Commerce fails to establish a prima facie case of personal jurisdiction over the Cheramie defendants under the fraudulent transfer rule.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 12] filed by defendants Jared Cheramie and Joshua Cheramie (the "Cheramie defendants") be GRANTED, and that the plaintiff's claims against the Cheramie defendants be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 19th day of June, 2018.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**